Mr. Leonard? May it please the court, I'm Jim Leonard, with the Atlanta office of Barnes and Thornburg. I have the privilege of representing the Appellant Defender Security Company in this appeal. Your Honors, all of you, myself, my opposing counsel, everyone in this chamber, people speaking loudly in your hall outside, we all have something in common. It's remarkable. We all have heard a particular sentence. In fact, I'd venture to guess that everybody in this building has heard this same sentence. Maybe in this city. We all share this in common. This call may be recorded or monitored for quality assurance or training purposes. We've all heard it. There are people nodding behind me, acknowledging they've heard it, or maybe they're nodding off. But the fact is, we've all heard that statement. First Mercury, in this case, convinced the district judge that there was no hint, suggestion, or speculation in the underlying Brown complaint that someone else would listen to these recordings that are, of course, the subject of this case. And the court reached that conclusion because there was no evidence presented that anybody heard it after it was recorded. So that was, I think, pretty reasonable on the court's part. Well, Your Honor, at, of course, the 12B6 phase, when the motion dismiss filed, we don't believe it would have been proper to submit evidence. We had asked the court to, in fact, if it was gonna grant this motion, to convert it under 12D to a motion for summary judgment, allow evidence to be presented, to be obtained from the defendant with respect to underwriting, with respect to other meetings of the word publication in this policy. But that didn't happen. Instead, the court granted the motion to dismiss simply based on the four corners of the Brown complaint. Right, because inside the complaint, you never listed that anyone else heard it. Right? That wasn't in the complaint. What was in the complaint was it was recorded, but there was nothing in the complaint to show someone heard it. In fact, the complaint, of course, alleges that in the Brown complaint, which is what triggers the coverage, the Brown complaint alleged that Defender utilized call recording technology and stored all of these telephone calls for other business purposes. And again, at the 12B6 stage, because we're a policy holder, all reasonable inferences are in our favor. The ties go to the runner, and we're the runner in this case. We bought the policy, it had certain language that was not being defined. The fact is, other business purposes in the Brown complaint could only mean for quality assurance and training purposes, meaning a supervisor, someone else at Defender will be listening to these phone calls. Meaning it's possible. Right. It's certainly not only a reasonable inference, I think it's the only reasonable inference from that statement. Why else... It's possible that any person would listen to, right? But only possible. And Brown didn't have to allege or prove that the call would be listened to by anyone else in order to prove her case, did she? That's correct, out of the California basis. Let me ask you, if I'm in a phone call and I take notes about some sensitive matters during that phone conversation, have I published the contents of that conversation? Well, strictly taking notes under the California Invasion of Privacy Act, that would not be a violation because it's the recording of the conversation. Have I published the content? Have you published it? By taking notes? Conceivably, because you've allowed it to be recorded such that someone else could review it. That is, it could be deemed to be... So if I take notes and I've published the material? Well, if that's the only place they go, then conceivably not, no one else may see those. But if a... How is this different? Because the call recording technology that's alleged in the Brown complaint takes these phone calls and again, this is not from 20 years ago, this is not a common law invasion of privacy type claim. This is technology today, the phone calls are taken, they're reduced to digital files, and the supervisors can listen to those. That's what they're set up for. They're designed for quality assurance and training purposes for supervisors to be able to listen to those calls at any time. That's the whole point of recording them. There would be no other point to recording a telephone call, thousands of telephone calls. Why else would Defender, with a call center operation, be recording all these phone calls? It's for that specific reason, for quality assurance and training purposes. Could also be used for the person who is engaged in the call to just review the material and make sure, for example, they got the social security number right or they got whatever vitals they needed correctly, so they could go back, make sure they got the information. Conceivably, but again, quality assurance and training purposes is that other business purpose that's alleged in the complaint, which is... It has the benefit of being the truth, not just a reasonable inference from the allegations in the Brown complaint. That is, in fact, what they used it for. They used them for review and confirm that customers were being provided with appropriate information. Did you... Remind me, how far did the Brown complaint get? Is it still pending? Is it settled? At the time, there's a process. The Brown complaint was... The action was settled. So the action was actually settled during the coverage action. Okay. Presumably, if anybody had listened to Brown's recording, that would have been information in your client's control? Yes. If someone had listened to the Brown telephone call, that would have been in our client's control. Yes, because it's a digital file at our client's. Now... And your client would know? Our client would know whether or not that had been recorded. Most likely... Whether anybody had listened to it. I'm sorry? Whether anybody had listened to it? I don't know whether or not the call recording technology would be able to have a record of whether or not a particular supervisor listened to a call. But again, there was no discovery in the Brown case to bring that out, and of course... The information, it's your information, right? Correct. And again, if this had gone to summary judgment, if we had permitted, been permitted discovery, we could have presented that... What could we have discovery for? Well, because again, we would wanna get information from the defendant as to how, number one, it interprets that particular provision of the policy. No, no, no, no, no. I'm talking about the factual issue about whether this recording was simply recorded and lay dormant, or whether anybody listened to it, which presumably would arguably amount to publication. If I may, go back to the other aspect of this which relates to publication, and that is the Encore decision. Would you... Why don't you answer my question, and then I'll be happy to hear about the Encore decision. Okay, certainly. I don't know for a fact whether or not a supervisor or a defender clicked on that file and listened to the Cammie Brown telephone conversation. I don't have that information here. So there's no indication or allegation of publication? Well, I believe there is an allegation of publication because of the other business purposes which are alleged in the Brown complaint. Publication in the sense of within your client's corporation? Publication within, yes, to another individual. In other words, a supervisor, another employee, agent representative, as it's... Again, there are a number of people alleged in the Brown complaint as having call recording technology on their phones. So what is publication? In the Indiana Supreme Court case, we have the... Of course, we have the Doe versus Methodist Hospital case from 1997. That case dealt with invasion of privacy tort, but dealt... I see my time is... Your time's expired, but you can have another minute. Thank you, Your Honor. Publication, of course, on the California Invasion Privacy Act occurs at the moment it's recorded by the recording device. That violates the statute if there's no consent that's been obtained. Publication, therefore, as found in the Encore case in the District Court of Ohio, the publication occurs the minute that conversation is disseminated to, transferred to, transmitted to a recording device. That is the publication. So how is a tape recorder different from my notes? The tape recorder, in this case, is designed, because of their business purposes, to be listened to by other people. You may take notes as a call sign... And I may distribute them or I may not. Well, if you distribute them or prepare them... If you prepare them to be given to other people, and that's the whole purpose of collecting your notes, if you intend to give them to other people, then I'd say that certainly is publication. Intent to publish is publication. If you're saving those calls to be issued for distribution, which, again, is the Webster's Dictionary that we use, which we don't even know if the District Court accepted that definition. Accepting it for distribution is, in fact, the definition of publication. So let's go back in this Brown case and let's pretend that we don't... I guess we'll give you more than... Yeah, yeah. That we don't... So we'll go until we're... Okay, we don't... The question's being asked. She has this discussion. The person takes notes right there and puts the notes in the file. And they're just notes. Identical situation here, except it's not electronic recording, but the person is writing down what is said and puts it in a file with her name on it at the company. Is that publication? Well, again, I think it's... Under your theory? Conceivably, it could be if that information, as part of their business purpose, is to collect those notes and have them available so that the supervisor can look at those notes and compare it to what information was obtained from the customer to see if that information's accurate. That is, if there is... So what if it's just the employee that wants... The employee just checks to see if the information is accurate? The person who actually had the call. Well, I guess it's kind of apples and oranges there because you have, with a California invasion of privacy statute, notes aren't what we're talking about. We're strictly talking about a recorded, a tape recorded conversation. No, I understand that, but I'm trying to get to the point that Judge Hamilton was making. If we have this, in our particular case, if it was recorded in that the person took notes, so they listened to what the person said on the phone verbatim, took down everything that she said, put it in a file there, would that be publication? Well, I guess we wouldn't be here because it wouldn't have violated the statute, so is it publication? Again, I think the only way I can really answer that is to say, what is the intent for that use? If they just take it and their only intention is to check their own work, the customer calling has just given that information to that person, so if that person is going to simply maintain their own file, not show it to anybody, not intend to show it to anybody, and just keep it in their desk, then maybe that's not publication. Okay, thank you. But it's, again, a different situation here where you're intentionally capturing the spoken words of these individuals, saving them to an electronically recorded file, and then with the intent to have someone else listening to them for quality assurance and training purposes. Thank you, Your Honor. Thank you, counsel. May it please the Court. Rachel Cray on behalf of FLE, First Mercury Insurance Company. The First Mercury Insurance Company policy issued to Defender Security provided coverage for oral and written publication of material that violates a person's right to privacy. Now, the privacy right at issue in the Brown complaint was strictly... It's a statutory right. The California Legislature saw it fit to make it unlawful for a company to record someone's telephone conversation without that person's consent and without notifying them. However, the California Supreme Court has interpreted that statute and found that it's a non-communicative... The act of recording is non-communicative. Simply because a recording is made does not mean it's communicated or it needs to be communicated to anybody else in order for there to be a cause of action under the act. However, for there to be coverage under the First Mercury policy, there does need to be oral or written publication that violates that person's right to privacy. Now, if Ms. Brown's... Did the California Supreme Court case go into publication? It did, Your Honor, in the respect of the litigation privilege. In that case, the Kimmel v. Golan case, it was a matter where there was recordings made by employees and then there was litigation. And the person who was asserting a claim under the act... I'm sorry, the party against whom a said that there is no cause of action under the act because these phone calls were used for the purposes of litigation. And the California Supreme Court found that no, there is a claim under the act the moment that a telephone call is recorded without the permission or the consent of the party. But it was used for the purpose of litigation in that case. It was, Your Honor. It was recorded before the litigation ensued. And the California Supreme Court found that there was... So it was in the context of being used in the litigation that the California Supreme Court said it was published when it was recorded. No, the California Supreme Court... It was not published. It was not published at the time it was recorded. And it didn't need to be published for there to be a cause under the act. Now, the Indiana Supreme Court in the Doe v. Methodist matter has clearly defined how Indiana interprets publication. And publication under the act can consist of communication to just one individual. But the court there wasn't asked to decide whether publication required communication to another individual, was it? I don't believe it was, Your Honor. But it found that it can consist of communication to just one individual rather than to a group of individuals or the public at large. It can consist of communication to one individual. Here, we have not... Communication by, from the initiator to the receiver constitutes publication? Correct. Well, I'm sorry, communication by the person in possession of the private information to one other individual. Regardless of whether it be a part of a corporate unit or, in other words, as opposed to somebody outside the corporation. Right, and I don't think that that matters in this instance because here there's not an allegation in the Brown complaint that her recorded conversations were listened to by a supervisor, were listened to by an employee, or were distributed to some other third party. That allegation is simply absent. The fact that it was recorded for business purposes, I don't think that implies anything. It could mean that it was just stored for 30 days and then discarded or recorded over. We don't know what the business purpose was for which it was stored. Now, counsel speculates that it was recorded... Does California provide legislative history? It does, Your Honor. And does a legislative history help any? It does not help in this instance, Your Honor. I believe that it is clear that the act of recording itself is the violation. It takes away the element of publication. There does not need to be an element of publication to have a claim under the act. But there does need to be an element of publication for there to be coverage under the first mercury policy, and that is the element that is missing here. Now, under counsel and his Maybe I'm confusing this. The act itself, California Act itself, does not require publication to be violated. It all has to be as it was recorded without notice to the person calling. That's correct, Your Honor. Would it be fair to describe the statutory cause of action as, in essence, a preventive measure? That is, presumably, what California is really worried about is potential later communication but it's a lot easier to prove the case. In essence, the prohibition will be more effective if it's easier to prove. I would agree with that. Can I ask you, counsel, why the district court decision in encore receivables shouldn't govern here by showing us the policy is at least ambiguous in this context? That's a reasonable interpretation. The judge reached, even if it's not the best interpretation, and ambiguities get resolved in favor of coverage. Well, I don't believe that the encore court found that the term publication was ambiguous. Instead, I believe it decided incorrectly when it found the act of recording, the minute the recording was made or you transmitted your voice onto a recording device, was, in fact, publication. I believe that was in the narrative. Well, if he's wrong, is he so unreasonably wrong that it doesn't, that it fails to show ambiguity? I don't believe that there's any ambiguity. The term publication is a widely used term. I believe that we can look at the Indiana Supreme Court for guidance as to how it would interpret the term publication as used in this policy. And, in fact, the court has stated emphatically and unquestionably that the just one individual. Right, but the problem here is, generally, the test for ambiguity in this context is whether the language is susceptible to more than one interpretation, reasonable interpretation, as applied to the particular context. Well, I think that there's very few... Was Judge Black unreasonable? Well, I don't believe that the judge in the encore matter determined that the word publication was ambiguous. No, he disagreed with you. Was that an unreasonable error? I believe it was, Your Honor. Why? Because there was no act of communicating that private information to any third party. And you need communication or publication to a third party, whether it be an employee within the corporation or somebody outside the corporation, for there to be an act of publication. You need to just say it out as information. Simply making a record of it is not an act of communication, is not a publication of that information. There's no... The privacy right is not violated simply by making a recording of it. It has to be distributed to another person for there to be coverage under the First Recruiter Policy. Unless your honors have any further questions, I'd like to rest on my briefs. Okay. Thanks to both counsel. The case will be taken under advisement and we move to... Did you have any rebuttal time left? Oh, I'm sorry. I didn't mean to cut off your briefly in terms of the California legislative intent and history with regard to the California Invasion Privacy Act at page 12 of our brief. The California Penal Code states that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications. The invasion of privacy resulting from the continual and increasing use of such devices and exercise of personal liberties and cannot be tolerated in a free and civilized society. The machine itself is the eavesdropper. That is what the California laws and laws similar to it around the country, that is what they hold. And again, the term publication, it has numerous meanings. You can look at all the different decisions across the country and almost have to conclude that it has more than one meaning. It's certainly open to more than one reasonable interpretation. In looking at the district court's decision, I don't know what definition the court ultimately used for it, but we believe that again, all ties going to the runner, the policyholders, the runner, any ambiguities go in our favor. Thank you very much. Thank you, counsel. Thanks to both counsel.